UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEWCLEUS, LLC**, <br><br> *Plaintiff,* <br><br> v. <br><br> **MARK A. BLAKE**, <br><br> *Defendant.* | : <br> : **JURY TRIAL DEMANDED** <br> : <br> : NO. _____ |

## VERIFIED COMPLAINT

Plaintiff Newcleus, LLC ("Newcleus"), through undersigned counsel, brings this action against Defendant Mark A. Blake ("Blake") and, in support thereof, avers as follows:

## PRELIMINARY STATEMENT

1. This action arises from Blake's breach of a February 28, 2022 Settlement Agreement. In exchange for dismissal of the claims against him, Blake assigned to Newcleus the right to receive annual trail commissions from certain Massachusetts Mutual ("MM") life insurance policies.[1] Blake expressly agreed that he would take no action—directly or indirectly—that would interfere with Newcleus's receipt of those commissions.

2. That is exactly what has occurred. In April 2025, Newcleus learned it had been replaced as broker of record on thirteen MM policies. Each policy was reassigned to Executive Benefits Network ("EBN"), where Blake now serves as Regional Managing Director. EBN—

---

[1] The trail commissions (defined below) are paid annually by the insurance carriers to the broker of record for the life of the policy, typically 20 to 30 years.

1

and, upon information and belief, Blake personally—will receive annual commissions that contractually belong to Newcleus.

3. By causing or facilitating these broker-of-record changes, Blake breached the Settlement Agreement. Newcleus is entitled to damages and, pursuant to the Agreement, a constructive trust over all commissions diverted from the MM policies.

## THE PARTIES

4. Newcleus is a limited liability company, with its principal place of business at 411 S. State Street, 3rd Floor, Newtown, Pennsylvania 18940. Newcleus is a citizen of Pennsylvania.

5. Defendant Blake is an adult individual who resides at 17552 Bearpath Trail, Eden Prairie, Minnesota 55347-3488 and 18503 E. Via Hermosa, Rio Verde, Arizona 85263-8121. On information and belief, Blake is a citizen of Minnesota.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interests and costs, and there is complete diversity between Newcleus and Blake.

7. Venue is proper in this district under 18 U.S.C. § 1391 because this District is where a substantial part of the events giving rise to this action have occurred.

## FACTS

### Bank Owned Life Insurance, Cases, Agents of Record, and Trails

8. The insurance policies at issue in this action are bank owned life insurance policies, referred to as "BOLI."

9. BOLI is a single premium life insurance contract specifically designed for banks to earn tax-deferred and possibly tax-free income, among other benefits, and is an important investment choice for many banks.

10. In a BOLI program, a bank purchases life insurance, insuring the lives of certain employees. The bank pays the policy premiums, owns the cash value of the policies, and may be a designated beneficiary.

11. BOLI provides a number of benefits to banks. It can be used to help fund and support deferred compensation and other post-retirement programs for its employees. It offers annual after-tax returns that are higher than the returns earned on other bank investments. The growth in a policy's cash value is tax deferred.

12. Additionally, a bank's earnings derived from BOLI policies may come from growth in the account value each year or from life insurance benefits generally payable on an income tax-free basis upon an insured's death. In instances where death benefits are paid by the carrier, the income received by the bank is tax free.

13. BOLI transactions between an insurance company and the bank are brokered by companies, such as Newcleus, and their agents.

14. Each transaction typically involves millions of dollars and can often take years to finalize. They each require substantial time, money, and effort on the part of the broker to connect the bank with a BOLI product which fits its specific needs.

15. The transaction pursuant to which a BOLI policy is sold to a bank or other financial institution is referred to as a "Case."

16. Upon closing of a Case, the underwriting insurer pays a commission to the company (such as Newcleus) and the particular sales representative or representatives who

closed the transaction (such as Blake).  The company (such as Newcleus) is referred to as the "Agent of Record."

17.     The Agent of Record is paid a commission, which falls into two categories: the initial premium which is paid at issuance of the BOLI policy, and the trail commissions, which are annual and subsequent commissions paid for the entirety of the policy's term.

18.     These commissions are split between the Agent of Record and the responsible sale representative(s) pursuant to a "split sheet" (sometimes referred to as the "splits") which memorialize the portion of commissions payable to each.

19.     The trail commissions are earned by the Agent of Record providing administrative services on the policy, including the provision of quarterly and monthly reports, the provision of due diligence reports to the insurance companies, the maintenance of online portals and libraries containing all documents and records related to the BOLI policies at issue, and the provision of various other regulatory, compliance, and accounting services.

20.     In most cases, banks can change the Agent of Record designations with the insurance carriers so that any new trail commissions would be directed to a new Agent of Record.

**Blake and the Underlying Action**

21.     Prior to 2019, Blake was a BOLI salesperson for Integrated Financial Services of PA, Inc. d/b/a Bank Financial Services Group, Inc. ("BFS") and, once it was formed, for Newcleus.

22.     As a salesperson, Blake sold BOLI policies on behalf of BFS and Newcleus.

23.     Consequently, Blake was entitled to a share of the commissions from the BOLI policies he sold. That share was determined by a split sheet.

4

24. In 2018, Blake entered into a Trail Preservation Agreement with BFS. Pursuant to the agreement, Blake agreed that neither BFS (or its successor, Newcleus) nor Blake would make any change to the splits in the event Blake separated from the company.

25. Blake also entered into a Swap Agreement with BFS and its founder, William Borchert ("Borchert"). Blake agreed to swap commissions he earned on certain policies with commissions Borchert earned on certain policies. To effectuate the swap, Blake was required to direct a bank to assign the commissions on certain policies to the Newcleus Parties.

26. However, Blake breached the Swap Agreement and failed to direct the bank to do so.

27. On December 4, 2020, Newcleus, BFS, and Borchert (the "Newcleus Parties") filed a complaint and initiated the action styled *Newcleus, LLC, et al. v. Mark Blake*, United States District Court for the Eastern District of Pennsylvania, Case No. 2:20-cv-06140-JS (the "Underlying Action").

**The Settlement Agreement**

28. On February 28, 2022, the Newcleus Parties and Blake entered into a settlement agreement (the "Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

29. Pursuant to the Settlement Agreement, the parties agreed, *inter alia*, on a revised split agreement on certain policies issued to the Massachusetts Mutual Life Insurance Company ("MM"). *See* Settlement Agreement at § 2(a).

30. The result of the new split was to cause Newcleus to receive $72,000 of new trail commissions on the MM policies each year. *See id.*

5

31. Blake represented and warranted that he was unaware of information and/or plans by any of the owners of the MM policies to cancel any of the policies and/or change the broker of record on the MM policies. *See id.*

32. Further, Blake covenanted and agreed that going forward he would not interfere with Newcleus' receipt of these new funds or otherwise prevent the payments from taking place, as follows:

> Blake covenants and agrees that subsequent to the date of this Agreement: (1) he shall not, directly or indirectly, take any action that would cause, in whole or part, the owner of the MM Policies to cancel any of the policies and/or directly or indirectly cause Newcleus not to be paid/receive trail/renewal income on the MM Policies...

Settlement Agreement at § 2(b).

33. Further, Blake agreed that he will not directly or indirectly cause the Newcleus Parties to be replaced on the MM policies subject to the agreement or "otherwise lose or have a reduction of their direct economic interest in a [policy subject to the agreement] without the prior written consent of [the party] having a direct economic interest in such [policy]." Settlement Agreement at § 6 (b).

34. Should Blake fail to comply with that obligation, "Blake acknowledges and agrees that the Newcleus Parties shall be entitled to an equitable lien and/or constructive trust on the commissions/payments which are the subject matter of Blake's breach under this [section]."[2] *Id.*

35. Finally, the Settlement Agreement contains an indemnification provision, pursuant to which Blake is obligated to indemnify the Newcleus Parties for all losses—including attorneys' fees—arising from his breach of contract, as follows:

---

[2] The Settlement Agreement mistakenly refers to Section 7(b) instead of Section 6(b).

> Blake agrees to defend, indemnify and hold the Newcleus Parties harmless from and against and in respect of any and all claims, suits, losses, liabilities, damages, deficiencies and expenses (**including reasonable attorneys' fees**) of any kind or nature, which the Newcleus Parties may suffer, sustain or become subject to by reason of, arising out of, or in connection with: (a) the inaccuracy or breach of any of the representations and warranties of Blake set forth in this Agreement; and (b) the breach by Blake of any provision, covenant or agreement contained in this Agreement or any agreement to be executed in connection therewith.

*Id.* at § 9(a) (emphasis added).

36. The parties executed and closed on the Settlement Agreement.

**Blake Breaches the Settlement Agreement**

37. Following closing on the Settlement Agreement, the parties performed and notified MM of the new split on the MM policies.

38. Blake began working for or with EBN and currently holds the position of Regional Managing Director for EBN.

39. In April 2025, Newcleus received notices from Massachusetts Mutual confirming that the broker of record had been changed on **thirteen** separate MM policies (the "Changed Policies"). The notices—each corresponding to a different, unrelated banking institution—were issued between April 14–21, 2025, as follows:

| DATE OF NOTICE | MM POLICY GROUP NO. |
|---|---|
| April 14, 2025 | 92607 |
| April 14, 2025 | 102803 |
| April 15, 2025 | 121418 |
| April 15, 2025 | 126620 |
| April 15, 2025 | 128930 |
| April 15, 2025 | 134026 |
| April 16, 2025 | 91984 |
| April 16, 2025 | 105918A |
| April 16, 2025 | 109912B |
| April 16, 2025 | 110320 |
| April 16, 2025 | 136230 |
| April 16, 2025 | 110708 |
| April 21, 2025 | 109107 |

*See* Confirmation of Change in Commissionable Agent notifications, collectively attached hereto as **Exhibit 2**.

40. Each change designated EBN as the new broker of record.

41. Each of the changes was purportedly initiated by a separate bank. *See id.*

42. Upon information and belief, Blake either directly or indirectly caused the policies to be changed from Newcleus to EBN. It is not credible that thirteen independent banks, acting simultaneously and without coordination, all selected the same replacement broker—EBN—where Blake now works as Regional Managing Director.

43. On August 8, 2025, counsel for Newcleus sent Blake a letter notifying him of the breach of the settlement agreement. A copy of the August 8, 2025 letter from John E. Kaskey, Esq. is attached hereto as **Exhibit 3**.

44. On August 14, 2025, counsel for Blake replied by denying that Blake had taken any action with respect to the Changed Policies and by denying that Blake has ever been employed by EBN. *See* August 14, 2025 letter from Alexander H. Hayden, Esq. is attached hereto as **Exhibit 4** ("Please also note that Mr. Blake has never been employed by EBN. To the extent that EBN website somewhere identifies Mr. Blake as an 'employee,' that is an error...We are confident that EBN will tell you the same.").

45. In fact, EBN's website identifies Blake as the Regional Managing Director and EBN's Managing Director confirmed that Blake was associated with EBN and that he received commissions from the MM Policies, including the Changed Policies at issue.

46. Newcleus has and will continue to suffer losses from the loss of trail commissions from the Changed Policies.

## **COUNT I: BREACH OF CONTRACT**

47. Newcleus incorporates all the foregoing paragraphs by reference as if set forth at length herein.

48. Pursuant to the Settlement Agreement, Blake was precluded from taking any action—directly or indirectly—which would cause Newcleus not to be paid/receive trail/renewal income on the MM Policies.

49. As stated above, Blake has breached the terms of the Settlement Agreement. It strains credulity to believe that thirteen separate banks simultaneously made the decision to switch the broker of record on the Changed Policies to EBN (*i.e.*, where Blake serves as Regional Managing Director) without any direct or indirect action by Blake.

50. This is particularly apparent as Blake has attempted to deny his involvement with EBN and has denied receiving any commissions from the Changed Policies.

51. The coordinated nature of the changes, Blake's association with EBN, his public identification by EBN as a Regional Managing Director, his receipt of commissions from MM policies while at EBN, and his demonstrably false denial of any affiliation with EBN collectively establish that Blake caused, directly or indirectly, the broker-of-record changes.

52. Pursuant to the indemnification provision in the Settlement Agreement, Blake is obligated to fully indemnify Newcleus for all losses—including reasonable attorneys' fees and costs—arising out of his breaches of the Settlement Agreement.

53. Newcleus has fully performed under the terms of the Settlement Agreement.

54. As a direct and proximate result of Blake's breach of contract, Newcleus has and will continue to suffer damages in the form of the lost trail commissions in excess of $75,000.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in its favor and against Defendant for compensatory damages, including direct and consequential damages, reasonable attorneys' fees, costs, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT II: CONSTRUCTIVE TRUST

55. Newcleus incorporates all the foregoing paragraphs by reference as if set forth at length herein.

56. Pursuant to the Settlement Agreement, the parties agreed that should Blake breach the contract "that the Newcleus Parties shall be entitled to an equitable lien and/or constructive trust on the commissions/payments which are the subject matter of Blake's breach under this [section]." *See* Settlement Agreement at § 6(b).

57. As described above, Blake has breached his obligations under the Settlement Agreement with respect to the Changed Policies.

58. Thus, a constructive trust in favor of Newcleus should be imposed upon all commissions/payments arising out of the Changed Policies.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in its favor and against Defendant and enter an order imposing a constructive trust on all monies received by Blake from the Changed Policies and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**BRAVERMAN KASKEY, P.C.**

Dated: December 18, 2025      BY:      /s/ Kevin W. Burdett
DAVID L. BRAVERMAN, ESQUIRE
KEVIN W. BURDETT, ESQUIRE
One Liberty Place - 55th Floor
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 575-3800
Facsimile: (215) 575-3801
braver@braverlaw.com
burdett@braverlaw.com
*Attorneys for Newcleus*